Clem PIERCE, Petitioner, Respondent,

v.

STATE of Minnesota, Driver and Vehicle Services, Appellant.

No. 51405.

Supreme Court of Minnesota.

March 20, 1981.

Warren Spannaus, Atty. Gen., Joel A. Watne, Spec. Asst. Atty. Gen., St. Paul, for appellant.

Lewis & Spicer, Richard G. Spicer and Howard S. Carp, Minneapolis, for respondent.

YETKA, Justice.

We are asked to review a district court proceeding brought under Minn. Stat. § 171.19 (1980) for review of the suspension of the driver's license of respondent Clem Junior Pierce under authority of Minn. Stat. § 65B.67(4a) (1980) by the Commissioner of Public Safety and the commissioner's refusal to issue a limited license for work purposes.

The petition was heard at special term in Hennepin County District Court on April 12, 1980. By an order dated May 1, 1980, the trial court ruled the suspension to be proper, but ordered the commissioner to

issue a limited license for work purposes. This appeal followed. We affirm in part, reverse in part, and remand to the commissioner.

In June of 1976, the commissioner suspended respondent's driver's license for operating an uninsured automobile at the time of an accident. In January of 1977, respondent began employment as a bus driver for the Metropolitan Transit Commission (MTC). In May of 1977, respondent's driver's license was again suspended for operating an uninsured motor vehicle at the time of an accident. On June 28, 1978, the commissioner issued respondent a limited driver's license that allowed him to operate buses owned and insured by the MTC. In March 1980, pursuant to Minn. Stat. § 65B.67(4a) (1980), the commissioner again suspended respondent's driver's license because respondent had been operating an automobile without insurance and had been involved in yet a third collision. The suspension was made effective for a period of 6 months.

Since the suspension became effective, respondent has procured insurance coverage for his automobile. The MTC has notified respondent that his employment will be terminated unless he obtains a license to operate a bus. All buses owned and operated by the MTC are insured.

The commissioner refused to reinstate respondent's license or to issue a limited driver's license applicable for work purposes only. Respondent then petitioned the district court for review of the commissioner's determination pursuant to Minn. Stat. § 171.19 (1980). Respondent requested the court to reinstate his license or to issue a limited license to enable him to continue his employment.

The district court found that the commissioner had authority to issue limited licenses under Minn. Stat. § 65B.67(4a) (1980), that the commissioner's decision not to issue a limited license for work purposes only was an abuse of discretion, and that respondent was entitled to a limited license for work purposes only. In finding that respondent

should be issued a limited license, the trial court specifically noted that respondent's accidents were not alcohol related and that there was no indication respondent was habitually negligent or reckless.

The issues raised on appeal are:

I. Did the trial court court err in concluding that the commissioner has authority to issue a limited driver's license after suspension of all driving privileges pursuant to Minn. Stat. § 65B.67(4a) (1980)?

II. Did the trial court err in concluding that the commissioner abused his discretion in refusing to issue a limited driver's license for work purposes after suspension of all driving privileges pursuant to Minn. Stat. § 65B.67(4a) (1980)?

■ The facts indicate that after respondent's second accident and suspension, he was issued a limited license applicable for work purposes only. In light of this, the commissioner's argument that he is without the authority to issue limited licenses is difficult to understand. A review of the operation of the applicable statutes confirms that the commissioner has taken inconsistent positions.

Prior to the enactment of the Minnesota No-Fault Automobile Insurance Act in 1974, the commissioner had the authority to suspend a driver's license for failure to have adequate insurance at the time of an accident under the provisions of the Safety Responsibility Act.[1] The new no-fault legislation repealed the suspension provisions of the Safety Responsibility Act. There were no specific provisions in the No-Fault Act that permitted the commissioner to suspend a driver's license for operating a vehicle without insurance.

After the enactment of the no-fault legislation and the repeal of the suspension provisions of the Safety Responsibility Act, the commissioner relied on Minn. Stat. § 171.18(1) (1980) to effectuate suspensions for failure to have required insurance coverage. That statute provides that a license may be suspended when department records show

1. Act of April 16, 1945, ch. 285, § 5, 1945 Minn. Laws 483, 486 (repealed 1974).

there is a violation for which revocation would be mandatory on conviction. The commissioner then looked to the no-fault sections which made operation of a vehicle without insurance a misdemeanor and provided for revocation of the operator's license on conviction for the offense. Minn. Stat. § 65B.67(2), (3) (1980). Using the misdemeanor provisions of the No-Fault Act and the suspension power granted by section 171.18(1), the commissioner continued to suspend licenses for driving without insurance after passage of the no-fault statute.

The commissioner was also able to rely on still another statute for his authority to issue limited licenses after suspension. Minn. Stat. § 171.30 (1980) provides that when a license has been suspended pursuant to section 171.18, a limited license can be issued to the driver.

It was the combined application of the above-cited statutes that permitted the commissioner in this case to issue respondent a limited license after his second suspension. The statutory provisions discussed above are still in effect, but the No-Fault Act has since been specifically amended to permit the commissioner to suspend licenses for owning or operating a vehicle without insurance. See Act of May 25, 1979, ch. 190, § 5, 1979 Minn. Laws 295, 296 (codified at Minn. Stat. § 65B.67(4a) (1980)). This amendment, however, did not specifically empower the commissioner to issue limited licenses.

The commissioner now contends that the specific legislative authorization contained in the 1979 amendment is the only statute under which he can suspend a license for failure to have adequate insurance and that in the absence of express authorization to issue limited licenses, he is precluded from doing so.

As noted earlier, the statutes relied on by the commissioner for suspension authorization after the enactment of the no-fault statute in 1975 are still in effect. Minn. Stat. § 65B.67(2), (3) (1980); id. §§ 171.-18(1), .30.

The commissioner cites Minn. Stat. § 645.26(1) (1980) for the proposition that the specific no-fault suspension provision added by the 1979 amendment is a particular provision that controls the general provisions formerly used by the commissioner to suspend licenses. That section provides as follows:

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Id. (emphasis added).

The language of the statute makes it clear that it is an interpretive provision designed to resolve conflicts or inconsistencies among statutes. The commissioner, however, appears to concede in his brief that there is no inconsistency or conflict here. The 1979 amendment to the No-Fault Act merely provided the commissioner with an additional provision under which he could suspend licenses for failure to maintain insurance coverage. There is also no indication that, in amending the no-fault statute, the legislature intended to halt what had become the commissioner's admittedly established practice of suspending licenses under other applicable statutes. Because there is no conflict or inconsistency between the applicable statutes, the commissioner could proceed with either the no-fault suspension provision or section 171.-18(1). A limited license can be issued under section 171.30 when the suspension is effected pursuant to section 171.18.

The no-fault suspension section and section 171.18(1) are complementary provisions. They can be applied simultaneously and without conflict. The fact that the commissioner has indicated he is proceeding under section 65B.67(4a) does not render section 171.18(1) inapplicable. Because the latter section can be used as a ground for

suspension, section 171.30 permits the issuance of limited licenses. The commissioner therefore has the power to issue limited licenses whenever there is a suspension for operating a vehicle without insurance. This result renders our resolution of the question of whether the commissioner has inherent authority to issue a limited license unnecessary.

The commissioner's decision was based on the belief that he had no authority to issue limited licenses. Because the commissioner was not aware that he had the discretion to issue a limited license, the trial court's determination that he abused that discretion by failing to issue a limited license was premature.

The proper course of action is to remand this case to the commissioner for a determination of whether a limited license should be issued in light of this court's holding that the commissioner does have the authority to issue such a license. The case is therefore remanded to the commissioner for a determination consistent with this opinion.